v. John M. Analetto Good morning, Your Honor. May it please the Court, Gary Pelletier for John Analetto. Good morning. Your Honor, if the Court permits, I'd like to reserve three minutes for a rebuttal. You may. Thank you. Your Honor, there are three issues here in this. This is a case where a jury found Mr. Analetto guilty of one count after trial on a two-count indictment, guilty of one count of collection of a line of credit by extortionate means under 18 U.S.C. section 894. And there are three issues that Mr. Analetto is presenting to the Court for today. And the first of those issues is essentially that the Court employed the wrong remedy after finding a Batson-Jebb violation in this context. This is a case where the government had peremptory challenges and utilized its peremptory challenges on six men before the defendant objected onto the seventh man and made a challenge based upon a pattern of discrimination. As the Court is aware, there are two types of challenges that can be made. One is following Snyder v. Louisiana, and in this case, the Court's case in Sanchez v. Rodin, where you could simply make a challenge based on discrimination itself. This isn't the type of case, given that white men or men just in general, not related to race, would be the majority in that pool. So this is a case that basically required a pattern. And when we get to the seventh juror, that's when Mr. Analetto objected, raised it, and indicated to the Court, every person that has been called here so far, every person that she has struck has been a male. Well, that doesn't mean that everyone was improper, does it? He's just establishing that at some point it becomes hard to believe that it's a coincidence that you get this many of them. I think it does go to the impropriety. And I think with the Court's finding, it goes on to the Court's remedy. It demonstrates that there was the impropriety, because I think that's part of it. As I understand it, counsel at trial asked only, objected only to that one juror. The judge then agreed and handed down the remedy, and then defense counsel specifically said that they were then content with the jury as it then stood. If defense counsel is content with the jury and isn't asking for anyone to be removed, why should we say the trial judge was required to reject defense counsel's happiness with the jury and pick another juror? Well, I don't know if it's exactly the – I mean, defense counsel was content or based upon the remedy that the Court chose. I don't think there's anything that indicates the defense counsel has to object to the Court's remedy. Well, he made no – he raised no questions. He made no further comments. Is the judge supposed to be clairvoyant? Well, I don't think so. Judge, I think the fact is to hear that what we're talking about is a pattern. And when the Court finds a pattern of discrimination, which essentially the Court found here, I would suggest that at that point the remedy that was used here is not correct. Are you saying that under Batson, every time when that occurs, the entire binary group has to be replaced? Not necessarily, but I think under the facts and the circumstances of this case, yes. Under certain circumstances, yes. If we have a pattern of discrimination, I think that's probably where that's going to go. Because once the Batson objection is raised, we're into structural error right at that point. And I believe at that point the Court, when it indicated the remedy, recognized the discrimination in the past. Because the Court said two things. The Court didn't say, okay, we can just sit this one juror and let's move on. The Court said, we're going to sit this one juror. Oh, and guess what, government? You're not going to strike any more men. You can use your impromptus on anyone else, but you can't strike any more men. The fact that they're putting that out there. And your client and counsel made no objection to what the Court said was the remedy and wasn't back to place to make an objection to the remedy if you were concerned about the remedy used. I don't think there's any case that's ever held the defense counsel has an obligation to object to the remedy. I think the defense counsel's obligation is to object to the Batson violation. Once we find a Batson violation, at that point, the error, any error that occurs is structural. So if the Court employs the wrong remedy, I believe that's evaluated as a structural error. Isn't that why the remedy might be relevant to figuring out what the error that was claimed was? In other words, the issue is whether you're, when the counsel was saying the prior seven men who were struck were all struck in violation of Batson, or whether all that was being said is this eighth juror, in light of the course that followed with those prior seven, was improperly struck under Batson. And consistent with the latter reading, which is the government's reading, the counsel focused on individual qualities of this particular eighth juror. And then the judge, in response to that, says, I don't buy the government's explanation for striking this eighth juror. So while the other seven might have been relevant to the evaluation of whether there was a Batson problem with the eighth, what in the record suggests that either the counsel or the judge was, in ruling on the eighth juror, also saying Batson was violated as to the other seven? Because of the remedy that he employed. That's what I was saying earlier. Basically, what we have here is not just saying, okay, we're looking at this one juror. Seek this one juror. There was more to that. The judge says, okay, seek the one juror and government. But couldn't we say that that may have been an error on the judge as to the remedy for the Batson violation on the eighth? But to draw from that a conclusion that the judge was therefore finding, without any findings at all, without evaluating the explanation as to any of the other seven, that there was a per se violation as to all other seven jurors, no matter their individual characteristics or anything. That's a lot to read into that statement about how to cure the violation on the eighth juror, isn't it? Well, see, I think if the judge is employing that particular remedy, it at least lends a strong inference that that's exactly what the judge is viewing. The judge was very concerned, as you indicated, that not only didn't they buy the government's explanation on that one juror, but every single juror, every single one that's been struck has been a male. And then the court employed the remedy, number one, seek this juror, and number two, you're not striking any more men. And that, I think, goes to the fact that there's at least an implicit finding, at least an implicit finding that those other jurors, this was a pattern of discrimination that affected those jurors. And we know from the Sixth Circuit case, Rice v. White, which I cited in my brief, 660, Fed 3rd, 242, we know that the remedy can't be simply prospective, let's seat men, or let's seat to cure the discrimination. It just doesn't work that way. And I would ask the court to look very closely at that case, because other than the seating of a one juror, the facts are very, very similar in that case. There was a case where there was more than, there were two challenged jurors, there were more that were actually involved in that particular case, and they couldn't seat the remaining six for whatever reason. He did seat the eighth juror. In this case, he did seat the eighth juror, but also employed that remedy, which strongly suggests that there is some sort of discrimination that is going on here. And I would submit under a structural error analysis that we should prevail here, because that's all that's required. Once the objection is made, we're into a structural analysis on Batson. I would also just like to briefly address another issue, which is the third issue raised in the brief, which is the issue of specific intent. And I would say on the case law, this Court has never addressed the question of specific intent under 18 U.S.C. 894, but the Second Circuit has addressed this. What was the purpose of the call to Twombly, other than to put fear in Twombly that he better think about paying? Or to simply, it could be simply to collect the debt. However, if he is under the influence of alcohol that he can't form any intent and he doesn't know what he's doing, I think that would go to that particular prong. Even if the purpose was, I mean, you would have to demonstrate that there was an intent, under the Second Circuit standard, an intent to place him in fear. Well, he wasn't so drunk that he wasn't able to use an untraceable phone, that he knew exactly what he was going to apparently say. There had been some conversation beforehand. Isn't that pretty close to specific intent? Well, I would submit that the Court found, did not reach a verdict on one of the two counts, but on the second count, I would submit that the fact is he was very, very intoxicated. And it's a question of if that is specific intent, we didn't get that instruction. It's evaluated under a harmless error standard. So the government would bear the burden of proving beyond a reasonable doubt that if given that instruction to the jury about intoxication, that they would have still returned a guilty verdict. And I submit that given his level of intoxication, even if there's countervailing evidence, I would submit that would be enough there for him to receive a new trial or for the jury to find him not guilty under those circumstances. Could you help me understand what the specific intent of fear is doing extra? So without that instruction, under the statute as I understand it, he has to knowingly have made an implicit threat of violence. Is that right? Yeah. He has to have the specific intent to cause fear of. . . No, no, no. I don't put aside the specific intent instruction for a moment. Okay. Without that, the government did have to prove that he knowingly intended to make an implicit threat of violence. Is that right? I think the government, as it argued, had to do so as an absence of mistake that there was knowing. . . To prove an implicit threat of violence, right? Right. Okay, so if I'm implicitly threatening you violently, what is the specific intent to induce fear adding to that? Is the idea that I have to know that I'm making that violent threat, you'll fear it? I don't think the victim fear is what's irrelevant here. I think there has to be. . . No, I understand. With respect to his intent, we know without the specific intent requirement that he has to knowingly intend to make an implicit threat of violence. So if I'm doing that, what do you want the government to prove he, in addition to that, specifically intended? Why wouldn't you think if I make an implicit threat of violence that I'm intending to induce fear? Well, I think it rises above just having a knowledge, a generalized knowledge of what you're doing. I think it has to be a specific intent to place the victim in fear, to place the victim in fear of his life or his property. And that, I think, is required. How is that different from calling up someone knowing you're about to say something that is going to put them in fear? Well, I think the fact is it doesn't. . . The problem with just knowing prong of it is knowing that you're making a phone call that a reasonable person should have known would place someone in fear is very different than actually having an intent to place someone in fear. Can we infer from what led up to that phone call that his intent was very, very clear? At first he wanted Russo to do it. Then when Russo wouldn't do it, he did it. Well. . . With a very clear intent to intimidate. That's what the whole conversation up to that point was about. Factually, Judge, I think what he was talking about was he wanted Russo to go up to his house and do something. That was completely. . . Am I really going to call him and say that? What's that? The testimony was, am I really going to call him and say that? Yes, you are. Just words. Say, you know what, we are going to delete it with your mother. Anyway. Right. Well, at this point it's simply, again, there's the instruction on intent. There's also the instruction that intoxication may negate intent.  Yes. Thank you, Your Honor. Good morning, Your Honors. I'm going to place the court Kelly Lawrence for the United States. I'd like to start with the second issue that was just discussed. And I'd like to note at the outset that the defendant in this case, although he requested a certain instruction regarding the intent for the extortion counts, he did not renew that instruction after the jury was charged. And so, therefore, this is review for plain error, which would affect the analysis. Well, he presented an instruction in writing to the judge. Yes. And the judge specifically said, I've reviewed your instruction and I've decided not to give it. Yes. Doesn't that now, under the rules that have been modified, doesn't that make clear counsel to preserve their objection to not giving that instruction? It's government's position that you still need to object when this trial occurred and you still need to object after the jury is charged in order to preserve the objection. When you say when this trial occurred, are you saying this occurred before the rule was revised? I'm not sure, Your Honor, which revision you're referring to. It didn't rule 52. I thought it was clear now that if you specifically ask for instruction in writing and the judge specifically indicates the judge has reviewed it and is not going to give it, you've asked and the judge says no. You don't need to do what you had to do in the old days, which is to say, I'm sorry, Judge, but to preserve myself for the first circuit, I'm going to ask you again and object. It's my understanding that that rule has not changed with respect to jury instructions, which are addressed under, I believe it's rule 32. Rule 52. But I know that that is the rule that's generally employed toward motions in limine. I can send a 28-J letter for that, Your Honor. All right. In any event, if this is not plain error in the government's, it's not the defendant's burden to prove that he suffered prejudice, and it's the government's burden to prove harmless beyond a reasonable doubt. We believe that the evidence does support that in this case. But I'd also like to talk about the specific intent argument the defendant raises, which I think the language, the nomenclature of specific versus general intent somewhat clouds the issue. When we're talking about specific intent crimes, usually the courts refer to that as something that requires more than just the facts that constitute the offense. It requires knowledge that the conduct is unlawful. And no court, to our knowledge, has held that Section 894 is that kind of specific intent crime. It's a general intent crime. The mens rea in the statute is knowingly, which courts generally almost universally determine is a general intent crime. So in that situation, intoxication would not negate that knowingly, that knowledge intent that's required. So the court was correct. There is no error of any kind in not giving the intoxication instruction. But even if it had been required, the evidence here was fully presented. It was admitted at trial. The defense elicited that the defendant had been drinking. The jury saw the defendant drinking in the video. There was evidence that it was scotch, and the defendant argued it very aggressively in the opening and closing statements that that should be a factor in the jury's consideration. So even if the instruction had been required, and given, the failure to do so was harmless beyond a reasonable doubt. And with regard to the specific intent to cause fear, which, again, I don't think that's specific intent. I don't quite follow that argument. It's harmless beyond a reasonable doubt because the evidence that he was not sufficiently intoxicated is overwhelming? No, I'm sorry. Typically when an instruction is requested and not given, the court looks to see whether it was correct as a matter of law and not substantially covered elsewhere. And whether it impaired the so substantial and impaired the defendant's ability to develop the defense. So if we're assuming that the instruction he requested on intoxication was correct, which we contend it wasn't, but if it was and it wasn't given, here the defendant was able to present his defense. The jury heard it. But the jury wouldn't know it was relevant. But that's not the standard for evaluating how we look at whether the court's failure to give the requested instruction was proper. And if we are also in a harmless error situation, all of the evidence proving the defendant's guilt, apart from the intoxication, was before the jury. And the government submits that all of that evidence would overwhelmingly establish his guilt, whether or not intoxication was a factor. So you're saying if both counsel feel a factor is so important that they devote time to arguing it in oral argument, and if, in fact, the law says that it's a relevant fact that the jury has to decide, it's not error for the court not to instruct, it's harmless error for the court not to instruct the jury that that thing they're just arguing about over there actually does make a difference and you need to pay attention to it? The government's position is absolutely that this intoxication instruction was not required because this is not a crime. Forget about the government's position. What law says that if that issue were that relevant and if the evidence weren't overwhelming one way or the other, that a judge can, that it's harmless error not to give an instruction? The court typically evaluates whether a requested instruction... You say typically. Is there, I know, no precedent for this standard. What are you, that you're urging us to adopt? In our brief, we cited the case of the United States versus MNSA, which does set forth a sort of three-part test when a defendant on appeal is challenging a requested instruction that was submitted to the district court and rejected by the district court. And if that's preserved, the government on appeal, or the court on appeal looks to see as a first step whether it was legally correct, substantively correct, whether it was not substantially covered, and whether it was so important that not giving it impaired the ability to present the defense. Well, on the last one, aren't we basically asking that we're confident that even had that instruction been given, the verdict would have still been the same? Yes. And so it cuts against you on that standard if both counsel thought this was important enough that they were arguing it and the evidence wasn't overwhelming one way or the other. That's my point. Our argument is that the evidence was overwhelming, and the fact that the defendant wanted to give this instruction because he felt that it was a good part of his defense doesn't undercut the force of the evidence of his guilt. Why was the evidence overwhelming that he wasn't so drunk as to negate the intent that he asked the judge to instruct him? The jury watched this video recorded meeting between the defendant and Russo. And in that video, you can see the defendant drinking something which was proven to be scotch, or testimony suggested it was scotch and it was not contested. And you see his actions throughout the video, and you can hear his words. And when you listen to the words, the jury could and did decide that he was not slurring his words or acting any crazier at the end than the beginning. At the third point, we're not interested in what this jury did. We're interested in whether the evidence was so overwhelming that no reasonable jury could have found him to have been so intoxicated to negate the intent. So that's what really is the government's position, that if you looked at that tape, no reasonable jury could find him to be so intoxicated as to negate the intent? Yes. And further, as this tape unfolds, the call to the correspondents is placed, I'd say, roughly toward the middle, maybe shortly before the middle. And there, during the defendant is definitely animated when he's talking to Russo, he has the state of mind to say, look, I'm going to make this call. He picks up his untraceable Walmart phone, which he says in the transcript it's an untraceable Walmart phone. He gets the number. He dials it. He's asking what's his name again, how much do we owe again. He gets on the phone. He makes a very measured, somewhat ominous, intentional statement, a veiled threat to this person. And then he hangs up the phone. And he's like, he's got to be thinking now. And then it continues on with the rest of the meeting where he is again animated. But that shows that no reasonable jury could have decided that at that moment that defendant was so out of his mind. Weren't there statements by participants in the conversation to the effect that he's drinking too much, I'm kind of worried about it. One of them says if he keeps it up, I'm going to be whacked or something like that. I mean, that seems to suggest that some people in the room thought he was out of control with the drinking. Russo made that statement. And, again, this is evidence was before the jury, as was the video, as was the call, as was his tone of voice and his demeanor. Remember, we're not talking about deferring to a jury finding here. So when you keep saying evidence was before the jury, come back to Judge Barron's point. If you're wrong on this instruction issue, you've got to convince us that no reasonable jury, that objective no reasonable jury looking at this evidence could come to a conclusion. And the government's position is that this evidence and the testimony that was given about the call by Russo and the video itself, no reasonable jury could find that the defendant was so intoxicated that he didn't know what he was doing when he made that call. He only had to know that he was making the call for the purpose that it was made, which was to collect the debt. And all of his statements during that call, regardless of any influence that was happening, he came in and out. If he's right about the instruction, he needed to know more than that. He needed to know specifically that he was causing or intending to cause fear. That's why they're asking for the instruction. Now, I understand the government says they weren't entitled to that instruction, that perfectly coherent argument. But for purposes of evaluating the relevance of the evidence about how intoxicated he was, what we're trying to figure out is whether a reasonable jury could not find him to be so intoxicated that he did not have the specific intent of causing fear in the person who was receiving the call, not just did he know that he was collecting a debt. Our argument about specific intent to cause fear is that this is not the kind of specific intent that would be negated by intoxication. I realize we've moved on, but I just wanted to make that clear. And in terms of whether he knew he was intending to cause fear, Your Honor mentioned earlier in questioning my brother counsel, it doesn't add much to what's already required, which is the government had to prove that he intended to make the threat. And perhaps fear is part of a threat in the common understanding of what it means, but it doesn't really add anything to the government's burden, and the government was required to prove the threat. And in that sense, he- This is not a case, I take it, in the government's view in which the person receiving the call was of a type that the one making the threat would have reason to believe that the threat would be discounted. It might be in a specific intent to cause fear. I suppose you could have a situation where even though I'm impliedly making a threat of violence, I might know the other party won't take it too seriously. But this is two strangers, right? They don't- Correct. They don't know each other. And the statute and the cases are very clear that the focus is on the defendant's conduct and intent, not on what the victim perceives. The evidence is overwhelming here because he said he was scared the heck out of him, which is relevant to the defendant's intent, but it doesn't go all the way. And here you have to show that the defendant intended to make this threat. And his statements throughout this video are very consistent with what the call conveys to this person, Chris Twombly, who owes the money. The point of this meeting and what was discussed in this meeting was how to get Russo to collect money from people and get the money that he needs to pay to the defendant. And they talk about that in a variety of ways. They talk about it in specific ways as to this particular person who owes the money, Chris Twombly. And when he makes the call, he conveys the same meaning. When he's done, he says that's got him thinking. This is all very consistent. And when it goes back to whether any reasonable jury could find that somehow his drinking of alcohol, as the meeting progressed, negated any intent of his to convey that threat, the government just submits that no reasonable jury could so find. Could you take a minute to address the government's views on whether the error in jury selection was structural error or not? The government's position there is that both an objection as to the Batson violation or JV violation must be made contemporaneously, and also that the error complained of here is as to the remedy, and that also must be objected to. There's not just suddenly a structural error evading the trial when a remedy has been given. The defendant was required to object, and he did not. If the remedy had gone, if there was a violation that had gone unaddressed creating a structural error, it's the government's position that you're still required to prove at least prong four, and arguably prong three, although that question has been left open by the Supreme Court, whether a structural plain error satisfies the third prong in terms of prejudice, but certainly the defendant must show a miscarriage of justice if he's claiming a structural error that was not objected to. And in this case, the government submits that he cannot prove that. We don't believe there's any error in the remedy to begin with, but he can't show any prejudice or manifest injustice where here the number, percentage of men that were on the deliberating jury was even greater than the percentage available in the venire in the beginning of the jury and paneling process. He also said he was content with the jury. He had ample opportunity to object, ask for the prior six men that were stricken to be put back onto the panel or to start over, and he didn't do that. And his failure to do so requires that this court affirm the decision of the district court. There are no further questions. Rest in peace. Thank you. Thank you. Morning, General. Just to address a couple of points made by the government. The government indicated with the instruction modified it would be intended to make a threat. That's not what would happen in a specific intent case as recognized by the Second Circuit, which is recognized, by the way, in three cases, all of which I've cited in my brief. But we're talking about the intent to make a threat to cause fear, the intent to cause fear. That's what would have to be given as part of the jury instruction. And, again, we're talking about when you have a specific intent crime, alcohol does negate a specific intent. And if that instruction is given, and I urge the court to follow the rationale and reasoning of the Second Circuit in giving that, but if that instruction is given, there is no way that they're under a harmless error analysis that you could possibly find, given the amount of alcohol in there. In fact, that this jury was unable to reach a verdict on another count, we're talking about there's no way you could see it. We could look at this and say there's a harmless error beyond a reasonable doubt that had evidence of an instruction that alcohol can negate specific intent or intoxication can negate specific intent. If that instruction was given, the jury would not have reached a different conclusion. With regard to the structural error, I would submit that, as far as Batson is concerned, the Batson violation, this Court's own precedent in Sanchez v. Rodin on page 307 indicates that when you have a finding of a Batson violation, that's structural error for which prejudice is conclusively presumed. And at that point, I would submit the defendant doesn't have a duty to object to the remedy. The remedy is something fashioned by the court, and in this case that remedy is improper because, again, we're talking about two things. One is seating the juror, and Batson had basically two remedies that they had discussed. One is some way to cure the prejudicial affliction, and one is to seat all the jurors that were victims of discrimination. One is to start with a new panel. So you're saying even if defense counsel was thrilled that the prosecution had knocked out those first six men because defense counsel had other reasons for not wanting any of them on the jury, tough luck for the defense counsel if they were going to get put back in the pool anyhow? I disagree. I think if the defense counsel had indicated that they were content and that they weren't objecting to those others. Which defense counsel did say, I'm content with the jury. At that point, but I think there was an objection. Again, it was a pattern objection that the defense counsel raised to those jurors. In this case, this wasn't something where the defense counsel could start with number one or number two or number three and raise that challenge. He had to basically wait for a pattern. That discrimination had already occurred. I think maybe the defense counsel indicated they were content with the jury going forward. But again, a prospective remedy doesn't cure the ill.